UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
ANNE TRYON and DAVID TRYON on
behalf of their minor
daughter, A.T.,

               Plaintiffs,

                               MEMORANDUM & ORDER
       -against-                15-CV-1534(JS)(GRB)

THE EAST ISLIP UNION FREE SCHOOL
DISTRICT,

               Defendant.
---------------------------------X
APPEARANCES
For Plaintiffs:       Ira Newman, Esq.
                   Brad A. Schlossberg, Esq.
                   Law Offices of Ira S. Newman
                   98 Cutter Mill Road, Suite 441-S
                   Great Neck, New York 11021

For Defendant:       Lewis R. Silverman, Esq.
                   Silverman & Associates
                   445 Hamilton Avenue, #1102
                   White Plains, New York 10601

SEYBERT, District Judge:

      Plaintiffs Anne Tryon ("Mrs. Tryon") and David Tryon ("Mr. Tryon") (collectively, "Plaintiffs") commenced this action on behalf of their minor daughter, A.T., against the East Islip Union Free School District ("Defendant") asserting claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), Section 504 of the Rehabilitation Act of 1973 ("Section 504"), and the Americans with Disabilities Act ("ADA"), as well as state law claims for negligent supervision or hiring, negligent infliction of emotional distress,

negligence, and negligence for failure to implement provisions of the Dignity for All Students Act ("DASA").

Presently pending before the Court is Defendant's motion to dismiss pursuant to Rule 12(b)(1) and (6). (Def.'s Mot., Docket Entry 6.) For the following reasons, Defendant's motion is GRANTED.

## BACKGROUND[1]

A.T. attended schools under the control and supervision of Defendant between 2010 and 2014. (Compl. ¶¶ 21, 24.) From sixth through eighth grade (2010 through 2013), A.T. attended East Islip Middle School ("EIMS"). (Compl. ¶ 24.) A.T. began East Islip High School ("EIHS") in September 2013. (Compl. ¶ 21.)

A.T. has been diagnosed with "severe depression, anxiety and mood disorder NOS."[2] (Compl. ¶ 18.)

## I. Bullying at East Islip Middle School

In or about June 2012, A.T. was subjected to bullying, threats, and harassment by "Ji. K", another seventh grade student, and her sister, "Ja. K.," a ninth grade student at EIHS. (Compl. ¶¶ 26-27.) Ji. K. told A.T. that "if she saw Ja. K. and her

---

[1] The following facts are taken from Plaintiff's Complaint and are presumed to be true for the purposes of this Memorandum and Order.

[2] The Complaint does not define the term "NOS." The Court assumes that this is an abbreviation for "not otherwise specified."

friends she should fear for her life and run because they were going to hurt A.T." (Compl. ¶ 28.) Ja. K. also told A.T. to "fear for her life." (Compl. ¶ 29.)

That same month, Mrs. Tryon contacted Ms. Jones, EIMS's Assistant Principal, and advised her of Ji. K. and Ja. K.'s bullying, threats, and harassment. (Compl. ¶ 30.) Mrs. Tryon also reported Ji. K. and Ja. K.'s bullying to EIHS and the Suffolk County Police Department. (Compl. ¶¶ 31-32.) Ji. K. and Ja. K.'s bullying and harassment of A.T. continued throughout the 2012-2013 school year. (Compl. ¶ 33.)

II. Bullying at East Islip High School

Ji. K., Ja. K., and students who were friends with Ja. K. subjected A.T. to "bullying, harassment, threats and physical assaults" at EIHS during the 2013-2014 school year. (Compl. ¶¶ 35-37.)

A. The December 2013 Meeting

In or about December 2013, Mrs. Tryon met with Mr. Bilotti, an Assistant Principal at EIHS, to discuss the bullying, harassment, threats, and physical assault of A.T. (Compl. ¶ 41.) Mr. Bilotti advised that he would "get things done." (Compl. ¶ 42.)

Approximately two weeks after their December 2013 meeting, Mrs. Tryon telephoned Mr. Bilotti and advised him that A.T. "continued to be the subject of verbal bullying, harassment

and threats and . . . continued to be physically assaulted in the hallways of [EIHS] by Ji. K, Ja. K., and their friends." (Compl. ¶ 43.)  Mr. Bilotti advised Mrs. Tryon that he would review the security camera footage of the school hallways.  (Compl. ¶ 44.) Plaintiffs believe that neither Mr. Bilotti, nor any other school or district administrator or employee, reviewed the camera footage or investigated Mrs. Tryon's complaints.  (Compl. ¶¶ 45-46.)

B.  The December 18, 2013 Incident

On or about December 18, 2013, A.T. was bullied, harassed and threatened by Ja. K., Ji. K., and their friends in EIHS's hallways.  (Compl. ¶ 47.)  A.T. was advised that a student who had previously assaulted another student "had been recruited by Ji. K. to beat up A.T."  (Compl. ¶ 48.)  Mrs. Tryon reported this incident to Mr. Bilotti and the Suffolk County Police Department on that same day.  (Compl. ¶¶ 49, 55.)

On or about December 19, 2013, Mrs. Tryon telephoned Mr. Bilotti and told him A.T.'s "mental health was deteriorating due to the failure of the Defendant to address the incidents . . . ." (Compl. ¶ 50.)  Mr. Bilotti advised Mrs. Tryon that the bullying and harassment incidents were "in the past and that, 'we have to leave the past in the past.'"  (Compl. ¶ 51.)  Plaintiffs believe that neither Mr. Bilotti nor any other school or district administrator or employee investigated Mrs. Tryon's December 19, 2013 complaints.  (Compl. ¶ 52.)

C.  The January 11, 2014 Letter

On or about January 11, 2014, Mrs. Tryon mailed a certified letter to EIHS's Principal, Mr. Brenner (the "January Letter"). (Compl. ¶ 56.) The January Letter advised that A.T. was receiving treatment for anxiety and depression "due to the preceding history of bullying, threats, harassment and assaults" and requested that the Defendant "take immediate action to ensure that [A.T.'s] school day was free from bullying, threats, harassment and assaults." (Compl. ¶¶ 57-58.)

On or about January 13, 2014, Mrs. Tryon participated in a conference call with Mr. Brenner, Mr. Bilotti, EIHS's social worker, Mr. DePasquale, and EIHS's school psychologist, Dr. Constantino. (Compl. ¶ 59.) Mrs. Tryon was advised that she had not given EIHS "the time required to do their job." (Compl. ¶ 60.) During this phone call, Mrs. Tryon requested that the Defendant conduct an investigation pursuant to DASA. (Compl. ¶ 61.) Plaintiffs believe that Defendant did not conduct any DASA investigation. (Compl. ¶ 62.)

In or about January 2014, Mrs. Tryon spoke to the Superintendent of defendant East Islip Union Free School District, Linda Rozzi, by telephone. (Compl. ¶ 66.) Mrs. Tryon read the January Letter aloud to Superintendent Rozzi, who advised that she would meet with the administrative staff of EIHS and the bullying "would be taken care of." (Compl. ¶ 67.)

On January 14, 2014, A.T. was admitted for observation at Stony Brook University Hospital as a result of "suicidal thoughts and ideations." (Compl. ¶ 64.) Mrs. Tryon called EIHS's administration and advised that A.T. had been admitted to the hospital. (Compl. ¶ 65.)

D. <u>The January 21, 2014 Meeting</u>

On January 21, 2014, Mr. and Mrs. Tryon attended a meeting at EIHS with Mr. Bilotti, Mr. Brennen, Mr. DePasquale, and Dr. Constantino. (Compl. ¶¶ 68-69.) During this meeting, "the representatives of the District expressed anger at Anne Tryon . . . [and] would not agree to or advise the Plaintiffs as to the steps being taken to address the bullying, threats, harassment and assault of A.T." (Compl. ¶¶ 70-71.)

Approximately three weeks later, Mrs. Tryon called Mr. Bilotti and complained that A.T. was being bullied, threatened, harassed, and assaulted at EIHS by Ji. K., Ja. K., and their friends. (Compl. ¶ 73.) Mrs. Tryon advised that A.T. was called "white trash" and told, on a daily basis, "that she was 'a piece of shit,' that she 'should die' and that she should 'kill herself.'" (Compl. ¶ 74.)

During several phone conferences in February 2014, Mrs. Tryon again advised Mr. Bilotti, Mr. Brennen, Mr. DePasquale, and Dr. Constantino of the continued bullying of A.T. (Compl. ¶ 76.) Mrs. Tryon "was again repeatedly advised by the District

representatives that they were investigating the bullying, threats, harassment and assaults and that they would take care of it." (Compl. ¶ 77.)

E.  <u>The March 4, 2014 Incident</u>

On March 4, 2014, A.T.'s friend informed her that Ji. K. was "bragging in the high school locker room that she had destroyed A.T. and ruined her life." (Compl. ¶ 78.)

On or about that same day, Mr. DePasquale called Mrs. Tryon and told her to come to EIHS. (Compl. ¶ 79.) Mrs. Tryon was advised by Mr. DePasquale and/or Dr. Constantino that A.T. had "'told off'" Mr. Bilotti and had essentially stated that "'you are not doing anything' and 'you are not going to do a fucking thing until I am dead.'" (Compl. ¶ 80.)

Following her meeting at EIHS, Mrs. Tryon took A.T. to Stonybrook Medical Center. (Compl. ¶ 81.) A.T. began home instruction in or about March 2014 and remained on home instruction for the remainder of the 2013-2014 school year. (Compl. ¶ 82.) A.T. was hospitalized at South Oaks Medical Center for psychological treatment from May 25, 2014 through June 2, 2014. (Compl. ¶ 83.)

F.  <u>A.T.'s Return to EIHS</u>

In May 2014, Mrs. Tryon contacted Defendant[3] to determine

_____

[3] The Complaint does not specify the person or persons that Mrs. Tryon spoke with in May, 2014.

what measures would be taken to protect A.T. from continued bullying. (Compl. ¶ 84.) Defendant advised that A.T. would not be placed in classes with Ji. K. and that the school computer system would contain notations that A.T. was to be "completely separated" from Ji. K. and Ja. K. (Compl. ¶ 85.) In September 2014, Mrs. Tryon was provided with paperwork to complete for A.T. to have a Section 504 evaluation. (Compl. ¶ 87.)

A.T. returned to EIHS in September 2014 and discovered that she was placed in five classes with Ji. K. (Compl. ¶¶ 86, 88.) A.T. also discovered that her locker was four lockers away from Ji. K.'s locker. (Compl. ¶89.) The EIHS administration could not explain why A.T. was placed in five classes with Ji. K. or why A.T.'s locker was within close proximity to Ji. K.'s locker. (Compl. ¶¶ 91-92.) Mr. and Mrs. Tryon immediately removed A.T. from EIHS. (Compl. ¶ 90.)

A.T. was admitted to South Oaks Hospital for psychiatric treatment from September 6, 2014 through September 12, 2014. (Compl. ¶ 93.) Upon her discharge from South Oaks Hospital, A.T. attended the Newport Academy, where she received psychological counseling and academic instruction from September 12, 2014 through December 15, 2014. (Compl. ¶ 94.) A.T. was accepted to St. John the Baptist, a private parochial school, in January 2014. (Compl. ¶ 95.)

III. **The Complaint**

On March 24, 2015, Plaintiffs commenced this action alleging seven causes of action on A.T.'s behalf: (1) a Section 1983 claim based on a violation of A.T.'s right to equal protection; (2) a claim for disability discrimination pursuant to Section 504, 29 U.S.C. § 701 et seq.; (3) a claim for disability discrimination pursuant to the ADA, 42 U.S.C. § 12101 et seq.; (4) a state law claim for negligent supervision or hiring; (5) a state law claim for negligent infliction of emotional distress; (6) a state law claim for negligence; and (7) a claim for negligence with respect to Defendant's failure to implement the Dignity for All Students Act ("DASA"), L.2010, ch. 482, § 2, New York Education Law § 10 et seq. (See generally Compl.)

Defendant moves to dismiss the Complaint pursuant to Rule 12(b)(1) and (b)(6) arguing, inter alia, that the Court lacks subject matter jurisdiction over Plaintiffs' claims pursuant to Section 1983, Section 504, and the ADA (collectively, the "Federal Claims") due to Plaintiffs' failure to exhaust administrative remedies. (Def.'s Br., Docket Entry 8, at 4-6.) Defendant further alleges that to the extent the Court dismisses the Federal Claims, it should also decline to exercise supplemental jurisdiction over Plaintiffs' state law claims for negligent supervision or hiring, negligent infliction of emotional distress, negligence, and a

violation of DASA (collectively, the "State Law Claims"). (Def.'s Br. at 15-23.)

DISCUSSION

The Court first considers the issue of subject matter jurisdiction. As set forth below, because the Court lacks subject matter jurisdiction over Plaintiffs' Federal Claims and declines to exercise its supplemental jurisdiction over Plaintiffs' State Law Claims, the Court does not reach the merits of Defendants' 12(b)(6) arguments.

## I. Legal Standard

To withstand a motion to dismiss, a complaint must contain factual allegations that are sufficient to state a facially "plausible" claim to relief. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). This plausibility standard is not a "probability requirement" and requires "more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotations and citations omitted). While all allegations in the complaint must be accepted as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 679. The Court's plausibility determination is a "context-specific task that requires the reviewing court to draw on its

judicial experience and common sense." <u>Harris v. Mills</u>, 572 F.3d 66, 72 (2d Cir. 2009) (internal quotation marks omitted).

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000). The Court is required to determine whether it possesses subject matter jurisdiction prior to deciding a case. <u>Wynn v. AC Rochester</u>, 273 F.3d 153, 157 (2d Cir. 2001). <u>Accord</u> <u>Morrison v. Nat'l Austl. Bank, Ltd.</u>, 547 F.3d 167, 170 (2d Cir. 2008), <u>aff'd</u>, 561 U.S. 247, 130 S. Ct. 2869 (2008) ("Determining the existence of subject matter jurisdiction is a threshold inquiry . . . ."). The plaintiff bears the burden of establishing that subject matter exists by a preponderance of the evidence. <u>Makarova</u>, 201 F.3d at 113.

II. <u>Federal Claims</u>

The Individuals with Disabilities Act ("IDEA") seeks to "provide disabled students with a 'free appropriate public education' in the least restrictive environment suitable for their needs." <u>Cave v. East Meadow Union Free Sch. Dist.</u>, 514 F.3d 240, 245 (2d Cir. 2008) (quoting <u>Heldman ex rel. v. Sobol</u>, 962 F.2d 148, 150 (2d Cir. 1992)). <u>See</u> <u>generally</u> 20 U.S.C. § 1400 <u>et</u> <u>seq</u>. Particularly, the IDEA guarantees that parents of disabled students have "'both an opportunity for meaningful input into all

11

decisions affecting their child's education and the right to seek review of any decisions they think inappropriate.'" Kalliope R. ex rel. Irene D. v. N.Y. State Dept. of Educ., 827 F. Supp. 2d 130, 135 (E.D.N.Y. 2010) (quoting Cave, 514 F.3d at 245). Indeed, parents are entitled to "present a complaint with respect to any matter relating to the identification, evaluation, or education placement of the child, or the provision of free appropriate public education to such child." 20 U.S.C § 1415(b)(6)(A). In the context of the IDEA, "education . . . encompasses more than simply academics." Cave, 514 F.3d at 248 (internal quotation marks and citation omitted).

It is well settled that administrative remedies, including an impartial hearing and the appeal of the hearing officer's decision, must be exhausted prior to the commencement of an action pursuant to the IDEA. Kaliope, 827 F. Supp. 2d at 136. "IDEA's exhaustion requirement permits states and local agencies to employ their educational expertise, 'affords full exploration of technical educational issues, furthers development of a complete factual record and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.'" Hope v. Cortines, 872 F. Supp. 14, 19 (E.D.N.Y. 1995), aff'd, 69 F.3d 687 (2d Cir. 1995) (quoting Hoeft v. Tuscon Unified Sch. Dist., 967 F.2d 1298, 1303 (9th Cir. 1992)). Even where an administrative

hearing and appeal does not resolve a dispute, these procedures "'will at least have produced a helpful record because administrators versed in the relevant issues were able to probe and illuminate those issues for the federal court.'" Kalliope, 827 F. Supp. 2d at 137 (quoting J.S. ex. rel. v. Attica Cent. Sch., 386 F.3d 107, 112-13 (2d Cir. 2004)).

A "narrow exception" to the IDEA's exhaustion requirement exists where "exhaustion would be futile because the administrative procedures available do not provide adequate remedies." Scaggs v. N.Y. Dept. of Educ., No. 06-CV-0799, 2007 WL 1456221, at *5 (E.D.N.Y. May 16, 2007) (internal quotation marks and citations omitted). Futility is established where plaintiff demonstrates: "(1) that defendants failed to implement services that were specified or otherwise clearly stated in an [Individualized Education Program], or (2) that the problems alleged are systemic violations that cannot be addressed by the available administrative procedures." Kalliope, 827 F. Supp. 2d at 138 (internal quotation marks and citations omitted). See also Scaggs, 2007 WL 1456221, at *5 (plaintiff bears the burden of demonstrating the futility exception to IDEA's exhaustion requirement). Additionally, this Circuit has held that exhaustion will be excused where the parents of the disabled child were not notified of the remedies available to them. Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 149 (2d Cir. 2002) (holding that

"the failure of the defendants to notify plaintiffs of their procedural rights under the IDEA deprived [them] of the opportunity to take advantage of the procedural safeguards offered by the statute.") (internal quotation marks and citations omitted).  See also MB v. Islip Sch. Dist., No. 14-CV-4670, 2005 WL 3756875, at *8-9 (E.D.N.Y. Jun. 16, 2015).

The "systemic violation" exception to exhaustion is applicable where the plaintiff "challenges 'the framework and procedures for assessing and placing students in appropriate educational programs . . . or [where the] nature and volume of complaints [are] incapable of correction by the administrative hearing process.'"  Kalliope, 827 F. Supp. 2d at 138 (quoting J.S., 386 F.3d at 114) (ellipsis and alterations in original).  On the other hand, exhaustion of administrative remedies is required where plaintiff's claims are founded in "individual characteristics, such as the sufficiency of a child's [Individualized Educational Program]."  Id.

The IDEA's exhaustion requirement also applies to plaintiffs seeking relief under other federal statutes if relief is also available under the IDEA.  J.S., 386 F.3d at 112 (holding that plaintiffs' Section 504 and Section 1983 claims were both subject to the IDEA exhaustion requirement).  See, e.g., Intravaia ex. rel. Intravaia v. Rocky Point Union Free Sch. Dist., 919 F. Supp. 2d 285, 292 (E.D.N.Y. 2013); Hope, 872 F. Supp. at 19-24

(dismissing plaintiff's claims pursuant to Section 1983, ADA, and Title VI of the Civil Rights Act of 1964 based on failure to exhaust IDEA requirements). See also 20 U.S.C. § 1415(l) ("Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under . . . other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].").

This Circuit has held that a plaintiff's request for monetary damages does not vitiate the IDEA's administrative exhaustion requirement despite the fact that monetary damages are not available pursuant to the IDEA. Polera, 288 F.3d at 487-88. Accord Stropkay v. Garden City Union Free Sch. Dist., 593 F. App'x 37, 40 (2d Cir. 2014); Skaggs, 2007 WL 1456221, at *4 ("As the gravamen of plaintiffs' action is a claim under IDEA, their request for damages pursuant to other federal statutes and state tort law does not allow them to evade the statute's exhaustion requirement.").

Plaintiffs do not dispute that they have not exhausted their administrative remedies. (See generally Pls.' Br., Docket Entry 14). Instead, Plaintiffs argue that "[w]here the failure to provide a free and appropriate public education is merely a

collateral result of a defendants alleged conduct and the gravamen of the complaint is . . . for compensatory damages stemming from a District's alleged indifference to disability based discrimination under the ADA and [Section 504], a plaintiff need not allege exhaustion of administrative remedies, because the relief sought is beyond the scope of the IDEA." (Pls.' Br. at 4 (citing to Preston v. Hilton Cent. Sch. Dist., 876 F. Supp. 2d 235, n. 1 (W.D.N.Y. 2012)).) The Court disagrees.

First, the Court is not persuaded by Plaintiffs' attempt to style the Complaint as a claim for "indifference to disability" that is purportedly beyond the purview of the IDEA. (Pls.' Br. at 4.) As previously noted, it is well-settled that the IDEA is applicable to other federal statutes where relief is also available under the IDEA. J.S., 386 F.3d at 112. The Complaint expressly alleges that A.T. was subjected to discrimination, bullying, harassment, and physical and emotional abuse based on her disability and that as a result of Defendant's allegedly inadequate response, "A.T. was discriminatorily deprived of educational benefits, specifically, a supportive, scholastic environment free from discrimination and harassment." (See, e.g., Compl. ¶¶ 111, 117, 125, 131, 138.) Particularly, Plaintiffs' Section 1983 claim asserts that "Defendant deprived A.T. of the right to be free from invidious discrimination due to her disability as guaranteed by the [ADA] and [Section 504]." (Compl. ¶ 111.) With respect to

Plaintiffs' Section 504 and ADA claims, the Complaint alleges that A.T. qualified for the school's services, which included "the right to a safe and bullying-free educational environment, and to a school with systemic and protective responses to the abuse of students based upon their disability." (Compl. ¶¶ 122, 136.) Thus, Plaintiffs' claims are founded in "'grievances related to the education of disabled children,'" and they are required to exhaust the IDEA's administrative remedies prior to filing suit in federal court. Stropkay, 593 F. App'x at 40 (quoting Polera, 288 F.3d at 481).

Plaintiffs' reliance on Preston is equally unavailing. The Preston Court included a footnote rejecting defendants' argument that the IDEA exhaustion requirement was applicable because "the gravamen of the plaintiffs' claims is not the denial of a [free appropriate public education] to A.P., but a request for compensatory damages stemming from the District's alleged indifference to the disability-based and gender-based discrimination suffered by A.P." Preston, 876 F. Supp. 2d at 245, n.1. The case at bar is distinguishable from Preston in that Plaintiffs do not assert any claims based on gender discrimination. (See generally Compl.) Moreover, Preston appears to be an outlier in declining to apply the IDEA to claims founded in a school district's failure to sufficiently respond to disability-based bullying. See, e.g., GM v. Massapequa Union Free Sch. Dist.,

No. 14-CV-4126, 2015 WL 4069201 (E.D.N.Y. July 2, 2015); MB, 2015
WL 3756875, at *7; T.K. v. N.Y. City Dept. of Educ., 779 F. Supp.
2d 289 (E.D.N.Y. 2011); Wang v. Williamsville Cent. School Dist.,
No. 08-CV-575S, 2010 WL 1630466 (W.D.N.Y. Apr. 21, 2010).

Moreover, this District has previously rejected an
argument nearly identical to that asserted by Plaintiffs with
respect to the application of the IDEA. In M.B. v. Islip School
District, Plaintiffs alleged that R.B., a teenager who suffered
from Tourette's syndrome and anxiety disorder, was bullied based
on his disability, received disparate discipline based on his
disability, and was denied the opportunity to benefit from the
defendant school district's educational services. M.B., 2015 WL
3756875, at *2, 7. The M.B. plaintiffs argued that the IDEA's
exhaustion requirement did not apply because "[the] complaint
alleges deliberate indifference to bullying, harassment and
discrimination of [R.B.] by teachers, administrators, and other
students, based on [R.B.'s] disability, and thus . . . allege
discrimination beyond a mere violation of the IDEA . . . ." Id.
at *7 (internal quotation marks and citations omitted). The Court
held that the IDEA applied because plaintiffs' federal claims
"relate to the interplay between RB's disability and the
educational services provided to him and/or his treatment by
teachers and school administrators." Id.

Second, the fact that Plaintiffs are seeking compensatory damages has no bearing on the applicability of the IDEA. (Pls.' Br. at 4.) See Polera, 288 F.3d at 487-88 ("The fact that [plaintiff] seeks damages, in addition to relief that is available under the IDEA, does not enable her to sidestep the exhaustion requirements of the IDEA.")

Third, the Complaint does not set forth any basis for the application of the futility exception to the IDEA's exhaustion requirement. See Kalliope, 827 F. Supp. 2d at 138 (futility is established where defendants failed to implement services set forth in an Individualized Education Program or the complaint alleges "systemic violations" that cannot be remedied by administrative procedures). The Complaint does not allege that an Individualized Education Program was created for A.T. (See generally Compl.) Moreover, the "systemic violation" exception is inapplicable because Plaintiffs are not challenging "the framework and procedures for assessing and placing students in appropriate educational programs," and the Complaint does not allege that the "nature and volume of complaints [are] incapable of correction by the administrative hearing process." J.S., 386 F.3d at 114.

Although Plaintiffs allege in their opposition papers that Defendant "never advised the Plaintiffs that their daughter could be evaluated for an Individualized Educational Program nor of their right to appeal any determination by the District not to

provide such a program," this allegation does not appear in the Complaint. (See Pls.' Br. at 6; Compl. (emphasis in original).) Parenthetically, the Court notes that the Complaint does allege that Mrs. Tryon was provided with paperwork to complete for a Section 504 evaluation. (Compl. ¶ 87.)

Accordingly, Plaintiff's federal claims are DISMISSED WITHOUT PREJUDICE due to the Court's lack of subject matter jurisdiction

III. <u>State Claims</u>

The Court declines to exercise supplemental jurisdiction over Plaintiffs' State Claims in light of its lack of subject matter jurisdiction over Plaintiff's Federal Claims. <u>See</u> 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiff's State Claims are DISMISSED WITHOUT PREJUDICE to refiling in the appropriate court.

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Docket Entry 6) is GRANTED. Plaintiff's federal claims are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. See <u>JetBlue Airways Corp. v. CopyTele Inc.</u>, No. 15-CV-0086, 2015 WL 616774 (2d Cir. Oct. 21, 2015) ("'Article III deprives federal courts of the power to dismiss a case with prejudice where federal subject matter jurisdiction does not

exist.'") (quoting <u>Hernandez v. Conriv Realty Assocs.</u>, 183 F.3d 121, 123 (2d Cir. 1999)).

Plaintiffs' State Claims are DISMISSED WITHOUT PREJUDICE to refiling in the appropriate court.


                              SO ORDERED.

                              /s/ JOANNA SEYBERT
                              Joanna Seybert, U.S.D.J.


Dated:     November  19  , 2015
           Central Islip, New York